W. T. FREEMAN ET AL. v. THE BANK OF COMMERCE.

(No. 2490.)

APPEAL from Kaufman County. Opinion by WILL-SON, J.

WOODS & CUNNINGHAM, counsel for appellants.

H. P. TEAGUE, counsel for appellee.

§ **338.** *Foreign banking corporation; right to sue in this state; section 16, article 16, of the constitution construed; case stated.* One Ayres, a grain dealer in Kansas City, Missouri, sold to appellants a car-load of corn to be delivered free on board the cars at Kaufman, Texas, and to be paid for by appellants when so delivered. Ayres shipped the corn, taking therefor the railroad company's bill of lading, to his order. He indorsed said bill of lading to appellee, and drew a check upon appellants at Kaufman, Texas, for $215, the agreed price of said corn. Appellee paid Ayres for said check its full face value, less exchange, and forwarded said check to Kaufman, Texas, for collection. Appellants refused to pay said check, although the corn had arrived at Kaufman and was ready for delivery to them. They claimed that Ayres owed them $50 or $60 on a previous transaction, and refused to pay said check until he would settle their said claim. The check having been returned to appellee

was by it presented to Ayres, who satisfied the same by giving appellee another check on appellants for $165 and paying the difference between the two checks in money. In the meantime appellants drew a check on Ayres for the amount of indebtedness claimed by them, and for-. warded the same to Kansas City for collection, which check Ayres refused to pay, and it was protested and returned to appellants, who immediately instituted suit thereon, sued out an attachment and had the same levied upon the corn in question as the property of Ayres, and procured said corn to be sold, and themselves became the purchasers. Appellee, alleging itself to be a banking corporation created by law of the state of Missouri, brought this suit to recover the value of said corn, and recovered judgment against appellants for said value, less the freight charges, which had been paid by appellants. By proper pleadings appellants called in question the legal capacity of appellee to maintain this suit. These pleadings were overruled, and the ruling is assigned as error. It is insisted by counsel for appellant that appellee, as a banking corporation created by the law of another state, cannot sue in this state. This position is based upon section 16, article 16, of our constitution, which declares: "No corporate body shall hereafter be created, renewed or extended with banking or discounting privileges." *Held:* This provision of the constitution is a limitation upon the power of the legislature, forbidding the creation, renewal or extension of such corporations within this state. It was not intended thereby to prohibit foreign banking corporations from resorting to the courts of this state for the enforcement of legal rights which they might have against citizens of this state, which rights are not claimed by virtue of "banking or discounting privileges" exercised within this state. If a foreign corporation, as such, were to undertake to carry on a banking or discounting business in this state, and to assert claims in the courts of this state arising out of such business, it would not, perhaps,

be permitted to do so.    But such is not the nature of the claim asserted in this suit.    This claim does not arise out of the exercise by appellee in this state of a banking or discounting privilege, but arises out of a transaction occurring in the state of Missouri.    It was not error, therefore, to overrule appellants' said pleading.

§ **339.** *Banking corporation; ultra vires; power to take collateral security.*    It is also insisted by counsel for appellants that appellee, being a banking corporation, could not buy, sell, own or sue for the recovery of agricultural products, either directly or indirectly.    That it purchased said corn, and that said purchase was *ultra vires.*    *Held:* Appellants did not purchase and own the corn absolutely.    It purchased the check of Ayres, and held the bill of lading of the corn as collateral security for the payment of the check.    Such was the legal effect of the transaction.    Ayres did not sell the corn to appellee, for he had sold it to appellants and had delivered it to them under the contract.    The transaction between Ayres and appellee was a usual and legitimate one in the conduct of a banking business, and such as is recognized as being within the legal scope of the powers of such a corporation.

§ **340.** *Transfer of bill of lading; effect of.*    Appellee's right with respect to the corn was acquired by the transfer to it, by Ayres, of the bill of lading therefor, which transfer was made without notice to appellee of appellants' claim against Ayres, and therefore appellee's right to the corn could not be defeated in whole or in part by appellants' claim against Ayres.    Nor did the subsequent change of drafts between appellee and Ayres in any way interrupt or impair appellee's rights.

November 26, 1887.                          Affirmed.